Thank you, Your Honor. May it please the Court. My name is Paul Zedlicki. I represent the AFPM plaintiffs in this second appeal challenging the constitutionality of the low-carbon fuel standard. With me is John Kinsey, who represents the Rocky Mountain plaintiffs. The fuel standard is unconstitutional for two reasons. First, it adopts a life-cycle analysis that imposes restrictions on the import of transportation fuels in an effort to control commerce occurring outside of California. That restriction is an impermissible extraterritorial regulation that violates both the Commerce Clause and the federal structure of the Constitution. Second, the fuel standards design and structure discriminate in favor of in-state interests at the expense of out-of-state competitors. California designed the LCFS as it was required to do under AB 32 to maximize the benefits and minimize the burdens on the consumer. And with a question, you argue in your briefs that Rocky Mountain decided only your Commerce Clause claims and did not consider any structural federalism claims. Aside from the Commerce Clause, what sections of the Constitution limit a state's ability to regulate out-of-state commerce? Thank you, Your Honor. Yes, in our briefs you're correct that we have agreed that the prior Rocky Mountain decision controls all except for our structural federalism argument. And it is a structural argument. It's based upon the structure of the Constitution reflected in cases like BMW v. Gore in which the Supreme Court has said that one state can't regulate outside of its borders. It has to regulate within its borders. So in BMW v. Gore, Alabama couldn't impose a penalty on out-of-state conduct that was legal out-of-state in order to increase the punitive damages award for a plaintiff who was in Alabama and who was subject to conduct that was illegal in Alabama. So part of it would be under the Due Process Clause, but inherently it's a structural argument. And the idea is that the states are sovereign and within their jurisdictions. And within those jurisdictions they can act, but they're not allowed to regulate outside of those jurisdictions. All right, then let me just ask and then I'll let you continue. What legal test would you recommend this court apply to decide your structural federalism claim that was not previously examined in Rocky Mountain? Well, Your Honor, the test under Rocky Mountain was whether the practical effect of the regulation controls conduct outside of a jurisdiction. And that's the test from Healy and that's under the Commerce Clause. The test that we advocate is that a state can't intend to regulate outside of its borders and regulate conduct that's in another state. Now, just to perhaps to short-circuit on this question, we submitted a motion previously, maybe I think a week ago, asking to dispense with oral argument. And what we did there is we identified the fact that there is a separate case, AFPM versus O'Keeffe. And in that case, we made the same extraterritoriality argument. However, and it was based on the structure and not only Commerce Clause, but on the structure. And so the O'Keeffe panel applied Rocky Mountain to the Commerce Clause portion of it and then applied, then rejected our argument with regards to the structure of the Constitution. So in our prior filing, we acknowledge that that's controlling on this panel. And we, you know, we think it's wrong and we're going to preserve it for further review, but that's why we're here preserving it. So, Counselors, Judge Gould, if I could interject a question, please. So for the implication from your motion to submit on briefs, at least that I took away, was that you think our panel is required to affirm based on the Rocky Mountain case for issues that you raised relating to it and what it held and based on the Oregon Fuel Standard case as to your structural argument. Yes, Your Honor. So you think we have to affirm and you take your chances on and make a hearing on the Supreme Court? That's right, Your Honor. We don't think that the O'Keeffe decision is distinguishable. In fact, the Oregon, you know, the Oregon program was modeled after the California program. With regard to extraterritoriality, they're both applying a life-cycle analysis. That life-cycle analysis is looking at conduct that is outside of Oregon, outside of California. We think that's extraterritorial, but the court in Rocky Mountain disagreed with us and the court in O'Keeffe, that was under the Commerce Clause, and O'Keeffe, the court, has disagreed with us with regard to the structure of the Constitution. Let me ask you, if I can, then some questions regarding mootness of the 11th Amendment and associational standing, because I have some questions regarding that. If the court were to rule in your favor that the 2011-2012 low-carbon fuel standard were unconstitutional, what kind of relief would your clients be awarded? So I think if you were to rule that the original LCFS in the 2012 were unconstitutional, then you'd likewise have to rule that the current LCFS is unconstitutional. The relief that we would be seeking is a declaration that they're unconstitutional, and secondly, an injunction precluding the unconstitutional enforcement of them. Now, this court in Rocky Mountain decided the question about whether the fact that the LCFS had been amended, whether that mooted challenges to the prior version of the LCFS. And in footnote 12, the court said, no, it did not moot that question, and the reason it didn't was because the credits and the deficits that are awarded under the original LCFS, the 2012 LCFS, and on to the current LCFS, they carry forward. You're talking about footnote 12 in our prior opinion? Yes, Your Honor. Okay, and that's what I wanted to ask you about. Well, you're saying you're seeking injunctive relief, is that right? Declaratory injunctive relief, yes, Your Honor. But the only field standard currently in effect is that of 2015 version, so I'm trying to figure out how there would be injunctive relief on a prior version that's no longer in effect. Well, the test for mootness is if the question that the court asks is it impossible to provide effective relief? Well, and so, and that's the test that the court applied previously, I think. No, but let me, I guess if I can just try to, what are we supposed to be stopping, though, regarding the 2011 and 2012? Well, the 2015 LCFS is applicable now, and part of its application is it's carrying, with regard to regulated parties, it's those regulated parties, they're carrying forward credits from the prior versions. Okay. So if you're enforcing the LCFS now, we're not seeking retrospective relief, we're seeking prospective relief, so it would be an order enjoining enforcement of the LCFS based upon unconstitutional allocation of credits. Seems that that hinges on these credits moving forward, is that right? Okay. Yes, Your Honor. So, but if CARB doesn't have the credits or record of all the credit allocations over the time, how can it recalculate credits without the participation of the individual members? I'm trying to reconcile that. Well, we are not asking for a recalculation of the credits, and that wasn't the relief we sought. We're essentially asking that CARB can enforce the LCFS based upon an unconstitutional allocation of those credits against the members. I'm trying to figure out how that works exactly, because as you know, the district court, you know, stated specifically, and he did term it in terms of recalculation. And so I don't know if that's what you're saying is distinguishable or, you know, is the problem here, but if I recall, the district court found that the recalculation of the credits was not plausible without individual participations of the plaintiff members' organizations. And so I'm trying to figure out, are you just saying, don't pay attention to what the district court said on recalculation. There's still somehow some credits out there that can move forward even now? Yes, Your Honor. And I guess I'm having trouble how that works, and is that really true? So the credits last forever. So you're assigned a credit back under the original. When you say you, don't you mean an individual member? An individual member, yes. But the relief that we're, you know, we brought this on behalf of, we brought this under, you know, under... Association. ...associational standing on behalf of our members. We're not seeking individual recalculations on behalf of the members. But I don't know how that works, though, if the credits, I mean, are the credits, and I'm going to ask your colleague across the aisle this, are they like, is that like the equivalent of money? Like, is that, or what is that? Because if that's like supposed to be money, then there might be an 11th Amendment problem. So the way the system works is if your carbon intensity, your average carbon intensity for a period is below the baseline, or is below the target, then you generate credits. If it's above the baseline, you generate deficits. So to the extent that you have been, you generate credits, some credits, or perhaps you could have accumulated additional credits under a different system, those credits carry forward and they are something you can do a number of things with. You could trade them with another party, or you can use them in the future to get rid of deficits that come up in the future. And so what we're really asking is essentially what the court decided in Rocky Mountain in footnote 12, which was, look, because those credits have an ongoing effect on your ability to, on the, whether or not someone is in compliance, then there's an ongoing, there's a prospective relief that can be granted. And essentially what we would ask for, and it's going to, it would depend on what the nature of the violation ultimately were to be, I'm sorry. Also, could I interject a question, please? So in the footnote 12 in Rocky Mountain, we said that as to the 2011 and 12 versions, they'd been amended, but they were still existing. And so relief on shifting credits or recalculating them was not then moot. But subsequent to that time, they've been totally repealed by California, is my understanding. So I don't really understand why that footnote analysis would apply to your claims now. So, Your Honor, so it's true that CARB characterizes what it did in 2015 as repealing the LCFS, the fuel standard. And in 2012, it amended it. But no one disputes that the same provisions, the structure is the same, the design is the same, the goals are the same. And in fact, what's the critical part is that the credits that were generated in 2012 under the 2012 system, they apply to 2015. So it's not like there's a cutoff between the credits that were generated in 2012 and 2015. They could call it a repeal all they want, but it's an ongoing effect. Counsel. Can you sell those credits? I think the credits that were generated under the original and the 2012 LCFS, they can be traded under the 2015 LCFS. They still apply. It's not like there wasn't some sharp demarcation. I'm sorry, Your Honor. I'm sorry. I was interrupting anyway. I have a problem with that argument because amended to me means that they're still in effect, but we've amended them. Repeal means they are no longer in effect. What is your response to that? And do you have any case that supports your argument? Well, the response is that it's undisputed that credits that were generated under the prior regimes, the original LCFS, the 2012 LCFS, they still apply to compliance for the 2015 LCFS. And so whether they call it a repeal or they call it an amendment, I mean, it's odd for a state to have what we consider to be an unconstitutional system. And then they say, okay, well, we're going to repeal it, but we're going to enact essentially the same system. And you don't need to look at whether the prior provisions were unconstitutional or not, or that we can moot those. Especially when those prior provisions and the credits that were generated on those prior provisions, they continue to apply today. And that's what we're, that's sort of our- What's your authority to that? I don't think, Your Honor, I don't think it's disputed that credits generated previously would apply today. And then the authority for it, the best authority I have is Rocky Mountain, which was in footnote 12, where the court acknowledged that under the system that the credits that were generated previously have an ongoing impact. I don't think that's changed. Whether they call it a repeal or an amendment, in substance, it's the same. And so, again, you're saying you do not want a recalculation. You're admitting here that you don't want a recalculation. We're not asking for recalculation. We did, you know, that would have to go on an individual by individual basis, and that's not what we're asking for. What we don't want is we don't want CARB to come after, be able to enforce the LCFS based upon unconstitutional allocations from the prior versions that have an ongoing effect now. And I think a court can make, can provide a remedy for that kind of issue. And that's what this court said previously in Rocky Mountain. So, and so what you do want is just a declaratory and injunctive relief here. Yes, Your Honor. Yes, Your Honor. That's right. And so the effect of that would be just stop what's happening now? I mean... Well, they would have to, they would have to figure out a way that they can remedy the violation. So they would be enjoined until they could, until they could fix the violation. And what is that? Just to be clear, what do you mean when you say remedy the violation? What is that you envision? It would depend on the violation. If it were, perhaps if there were discrimination based upon, if the court were to conclude that there were facial discrimination based upon the distance that fuels have to travel. So that component would have to be excised going forward. And so that would be the relief. And that would have an impact on compliance under the current provision. And that, likewise, if there were a limitation with regard, if the court concluded that it was extraterritorial, I'm not exactly sure if, you know, how that, how they would try to remedy that. Okay. 344, if you want to reserve the balance. Your Honor, yes, I think I'll reserve the balance of my time. Thank you. Thank you. Good morning, Your Honors. Excuse me. Deputy Attorney General Elaine Meckenstock for Defendants' Appealese. I want to start by addressing the mootness question, and I think there's an important distinction that may be getting lost here, between an ongoing violation of federal law, which can be prospectively enjoined under the Ex parte Young exception to sovereign immunity in the 11th Amendment, and ongoing effects of past alleged constitutional or federal law violations. You can see this very starkly, I think, in the Supreme Court's decision in Edelman, where the plaintiffs alleged that they had been unconstitutionally deprived of public assistance benefits. And the court decided that it could prospectively require the state to comply with federal law in issuing those benefits going forward, but that there was no retrospective relief available because of sovereign Those are clearly ongoing effects of alleged past violations of law. Those low-income plaintiffs clearly felt those effects very severely. Here, the effects that plaintiffs are claiming as to their credit balances are essentially equivalent to the bank balances for the plaintiffs in Edelman, which would also have been lower as a result of the alleged past violations. So the 11th Amendment allows prospective injunction to stop ongoing violations of federal law. It doesn't require, and it can't require, the government, the state to compensate for past violations. That was true in Edelman, and it's true here as well. And I will note that it is not an ongoing violation of federal law for the state to continue implementing a program, even if part of the basis of that program involves these allegations of past violations. And you can see that in this court's case, Students for a Conservative America v. Greenwood, which is 378 F. 3rd, 1129. And that involved student elections at the University of California, Santa Cruz, in which the students alleged that the state university had applied unconstitutional rules to the student election. And this court held that requiring the state to run a new election was barred by the 11th Amendment as retrospective relief. That means that the university was administering its programs consistent with those allegedly unconstitutional elections. In other words, it was treating whoever was elected as the student president as though they were the student president. And that is what California is continuing to do with its credit balances. It is treating those credit balances that were earned under the rules of the program at the time. So talk to me about it in terms then of footnote 12 of our prior opinion, then, because we found there was a live controversy still because the credits from the past LCFS schemes were ongoing. And so are they ongoing, those credits still ongoing even now? They could be, Your Honor. As plaintiff's counsel mentioned, the credits and deficits do carry forward between the different provisions of the regulation. And so if they do, how is this moot? It's moot because those are like the bank balances that were lower than they should have been in the Edelman case. Those are ongoing effects, not ongoing violations of the constitution. There are allegations about what California did to violate the constitution have to do with how California's program affected the market between 2011 and 2015 when the repealed provisions were in effect. So each individual would then have to bring a claim, claiming that it's ongoing and they cannot bring it as a group. That's yes, that's correct. There's also an associational standing problem that to go back and compensate members for, you know, sales that they made where they paid more for something because of the LCFS would require individualized proof. We don't have price information. We don't know how much they paid or why that's different than what they would have paid if the LCFS had not been in effect. So there definitely is an associational standing issue. And that also wasn't considered in the Rocky Mountain footnote. Neither was the 11th amendment. So counsel, yes, counsel, would you, would you say any recalculation of credits for the 2011 and 12 years would be retrospective relief? Yes, I would, your honor, because the, because it would be designed to compensate for alleged effects of the federal violation, not for not to stop the violation itself. And as the Supreme court said in green V Mansour, the difference between prospective and retrospective relief is that prospective injunctions give life to the supremacy clause by, by allowing federal courts to enjoin violations, ongoing violations of federal law, and that those interests in giving life to the supremacy clause can trump sovereign immunity, but compensatory and deterrence interests cannot trump sovereign immunity. So any attempt to address credits or deficits that might have other, what might be different if the rules of the market had been different is a compensatory remedy and barred by the 11th amendment. And as I mentioned earlier, the students for conservative America V Greenwood case demonstrates that the 11th amendment does not only bar remedies that seek funds from the state. I think that's, those are often the cases often arise in that context and this, that can be a point of confusion. I also, and I think actually that the case that plaintiffs cited the Porter case also usefully illustrates this distinction between ongoing violations and compensatory and retrospective remedies. Because in that case, this court held there was a prospective remedy available because the remedy was capable of repetition, but abating review. In other words, the injunctive relief going forward would prevent future violations of federal law. And it was not designed to compensate for support for elections that had maybe gone differently than they should have in the past. And so I want to move on unless this court has more questions about mootness. I want to move on and just briefly touch on plaintiff's contentions about the structure of the constitution. And just mentioned that the BMW V Gore case does not support their notions of federalism or their notions of extraterritorial regulation. The Supreme court held in that case that state courts in Alabama could not impose punitive damages based on conduct that occurred entirely outside the state of Alabama. But the state could impose liability for sales that occurred in Alabama where repairs were not disclosed as they should have been, but those repairs occurred in other states, right? So it isn't the case that just because some part of the conduct was lawful in another state, it removes the state's jurisdiction entirely. So BMW V Gore is entirely consistent with the Supreme court's dormant commerce cause extraterritorial jurisprudence, as well as with this court's decision in Rocky Mountain. Do you agree we're bound by O'Keefe and that O'Keefe answers many of the questions that are presented here? I, yes, this panel is bound by O'Keefe and O'Keefe did resolve the structural federalism question because it is identical. I also want to mention, and we pointed to some of the pages in our brief and our response to plaintiffs motion to dispense with oral argument that there have been some changes in the regulation. As we've been discussing the original version of it was repealed and replaced with the new version. Those changes I think are worth noting. They plaintiffs sort of undermine, you know, under emphasize them shall we say and can and, and argue that Rocky Mountain controls because the facts are identical. And I do think that Rocky Mountain controls this court's decision on the merits. But I don't think that the facts are entirely identical and the changes in the regulation simply underscore the absence of any constitutional problem. So for example, the crude oil provisions are very different now than they were when, when we were up here on the prior appeal. They now function in a two-step process by which at the first step, everyone, every crude oil is assigned the default average. So everyone is treated identical, which is the opposite of discrimination. And then at the second step, if the average has gone up, everyone receives some incremental deficits that both properly accounts for increases in carbon intensity on the crude oil side, which is important for the integrity of the program. And it also provides some form of a disincentive for especially large companies to produce, to provide to California large quantities of high carbon crude oil. So it provides some modest incentive for the purchase of low carbon crude oil, but that incentive operates without regard to origin. And so it is completely non-discriminatory. And I, so I just wanted to flag for the court that the, that the regulation has changed in that way. In addition, there is no longer a table six value set of values of default values as there were on the prior appeal. Now all alternative fuels, including all ethanol's obtain individualized carbon intensity values through either a tier one, a process or tier two process, depending on how conventionally. So I just wanted to flag those two differences in the regulation for the court. And then I would like to come back. I see I have a little bit more time to the mootness point. And again, just reiterate that there are two sort of general rules here. One is the general rule that when a law that is being challenged is mooted, I'm sorry, is repealed. It moots the challenges to that rule. And we cited the arc of California case for this proposition. In our brief, there are of course exceptions to that general rule, such as when a violation is capable of repetition, but evading review, that is that exception is clearly not applicable here because there is a regulation in effect now that is capable of being reviewed. And in fact, this court is reviewing it as we speak. And so there is no exception to that general rule that applies here. And then we also have the 11th amendment issue with respect to the unavailability of retrospective relief. And again, the relief that is available under the 11th amendment is prospective relief that would stop an ongoing violation of federal law. And plaintiffs characterized what they seek as an injunction of enforcement, but the repealed provisions have not applied to a sale in California since the end of 2015. So it is not clear as I think Judge McGee alluded to what it is they are seeking to enjoin. The law has already been applied through 2015. We can't unapply it. We can't undo the sales that occurred under those rules. And actually unwinding those sales would be tremendously problematic from a practical standpoint, as well as very inequitable to people who have been trading credits and engaging in negotiated transactions under those rules. We shouldn't go back and undo them even if we could, which we can't. But you still said that looking at the effects, they can go back and claim money damages for the credits that they have. You mean in an individual suit? Individually. Well, there would still be an 11th amendment concern unless they could bring a suit against someone in their individual capacity, which I think would be a very difficult thing to show to meet that bar. So I think that this case ends up kind of in the same place that Edelman ends up, that the KWXRELDW case that we cited in our briefs ends up. And again, those cases involved low-income plaintiffs who had been denied monetary benefits that they were constitutionally entitled to, and they had no recourse to get those back. And while that can seem unfair, it is the way the 11th amendment works, and it also means that we depend upon other aspects of the judicial system, such as preliminary injunctions, to avoid getting in the situation where there is a tremendous amount of retrospective relief that should be offered. And in this case, the ethanol plaintiffs took advantage of the availability of preliminary injunctions and obtained one initially in the federal court. The AFPM plaintiffs, who are the only ones seeking retrospective relief now, did not. And so, you know, that's just where we are. And that's the balance that we've struck, and I think that the Supreme Court in Green describes very well that balance, that the interests of the supremacy clause in enjoining ongoing violations of federal law are sufficient to overcome the 11th amendment, but compensatory interests are not. I'm just curious at this point, but so are those credits, would they be considered money damages from the state? That's, I think, an interesting question. And I think the answer is sort of both yes and no. They're not money damages in the sense that the money would come out of the state's coffers, as it would have, say, in Edelman. But the credits and deficits are, in essence, the currency of the LCFS program. And so in that sense, they are somewhat like money, that by seeking to get more of them, one is seeking to have more money. They are essentially a tradable instrument. And so while issuing more of them doesn't require the government to spend more money, it does provide additional financial resources, essentially, to the plaintiffs. So in that sense, it is very much akin to a compensatory remedy, like money damages. And as I mentioned earlier, the 11th amendment bar on retrospective relief is not limited to compensatory damages that would come out of the state's coffers. It bars other forms of relief as well. And in addition to the Students for Conservative America case I mentioned, you could also look at Black v. Hassleton, 633 Federal Appendix 573. That was a recent 2016 decision from this court on which Judge McGeough was on the panel. And then you can also see it in the way that the courts talk about it, that in, for example, Arizona Students Association versus Arizona Board of Regents, which is 824 F. 3rd 858, this court said, the 11th amendment bars lawsuits against a state for money damages or other retrospective relief. So again, the injunctive relief to stop the alleged ongoing violation of federal law is available only as to the current regulation that is being enforced. The original provisions were repealed at the end of 2015. They haven't affected a single fuel sale or credit sale or any other transaction since the end of 2015. There is no prospective relief available as to those provisions. And if the court has no further questions. Thank you very much. Thank you. Thank you, Your Honor. Just briefly. So again, with regard to the question of mootness, I go back to footnote 12 of the court's prior opinion. In the last sentence, the propriety of the scheme under which those credits were distributed remains a live controversy. And that was in context of the original LCFS as opposed to the amended. And I don't think there's a material difference between calling an amendment or a repeal, especially if the credits continue to carry over. There's no material difference there. But you just heard a whole litany of reasons why that wouldn't be the case. And with some authority, do you have any authority to support your. I'm sorry. There are a couple of cases. There were some cases that I just. This is the first I've heard of those cases. So I can't respond to those. I guess what I would respond is that one, we're not seeking retrospective relief. We're just seeking prospective relief. And therefore, there's no 11th Amendment. I'm not sure I understand how that prospective relief works in the context now when you have a repealed in place and, you know, how that wouldn't be retrospective. I know you've been calling it prospective, but then this was the questions that I had, you know, for this oral argument. And I think some of the cases that have been brought to our attention seem rather compelling. And I'm just trying to figure out if you have anything to offer in response. Well, what I'd offer is that what we're talking about is we are talking about it. The relief we saw was an injunction, a declaration, an injunctive relief. The injunction would be as to the current LCFS. But in determining whether someone is in compliance or not in compliance with the current LCFS, you have to look at the credits that they had under the prior provisions. So I guess that – I'm sorry, I'm not being more helpful to you here. That's okay. Thank you. Just very briefly on a couple of the other points that were raised. BMW v. Gore, counsel said that it doesn't support us. I just would point to the court's decision, this court's decision in Daniels v. Sharpsmart, where the court relied upon both BMW v. Gore as well as the Carbone case. And in that case, the court held that a California regulation was extraterritorial because it imposed conditions on the export of a product. In that case, it was medical waste. And Carbone says that it's extraterritorial and unlawful for a state to impose conditions on the import or export of a product in order to control conduct outside of the jurisdiction. With regard to crude oil, there have been changes, but the changes are not material. The point has always been that the way that crude oil is treated is the system has been designed to benefit in-state interests at the cost of out-of-state competitors. And then with regard to ethanol, it's true there is a Tier 1 and Tier 2, but again, there's no material difference under the current. It's really, you know, it's the same wine in old bottles. If you look at Tier 1, Tier 2, which is in Exhibit H of the request for judicial admission from CARB, on all of those fuel pathways, plain as day is location of the fuel, where it's produced, and the energy source that's used to produce it, and that was the problem with the initial. Your Honor, it seems my time is up. Thank you. Thank you, both counsel. I appreciate both your presentations and arguments here today. And let me just inquire. Judge Gould, do you have any other questions or anything you'd like to raise? No questions here, thanks. Thank you. Okay. Then I believe we'll be in recess. And the case of Rocky Mountain Farmers Union v. Richard Corey is submitted.
judges: D.W. Nelson, Gould, Murguia